UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:   Case No. 18-17194-RAM
Chapter 11

DU-RITE COMPANY,

        Debtor.
_____/

**DEBTOR'S EMERGENCY MOTION TO USE
CASH COLLATERAL OF SIMMONS BANK**

**EMERGENCY HEARING REQUESTED**

**Reason for Exigency**

**The Debtor requires the use of cash collateral of lender Simmons Bank to continue its business operations. Therefore, the Debtor moves the Court on an emergency basis for interim authority to use cash collateral. The Debtor respectfully requests a hearing on June 20, 2018, or the next available date which this Court deems appropriate.**

Pursuant to Section 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure, (the "Bankruptcy Rules"), DU-RITE COMPANY, the Debtor and Debtor-in-Possession (the "Debtor"), by and through undersigned counsel, moves this Court for entry of an order authorizing its continued use of cash collateral on which the lender Simmons Bank, SBA Lending Division (the "Lender") alleges a first priority lien, and to provide adequate protection to the Lender. In support of its motion, the Debtor states as follows:

1. This case was commenced by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on June 15, 2018 [ECF 1]. The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor operates a Denny's restaurant located at 925 Duval Street, Key West, Florida, 33040.

3. SJKWD, LLC ("SJKWD"), another Denny's operator in Key West, is an affiliate of the Debtor that filed Case No. 18-17154-RAM on June 14, 2018 in the Southern District of Florida. SJKWD is a co-signer on the loan.

### The Loan Transaction

4. On or about January 2017, Lender agreed to provide funds to the Debtor for general operating purposes under a Loan Agreement (the "Note") in the principal sum of eight hundred seventy seven thousand five hundred dollars and 00/100 ($877,500.00).

5. To secure its obligations to the Lender under the Note, the Debtor and the Lender entered into a General Security Agreement, pursuant to which the Debtor granted the Lender a lien on all of its assets including, among other things, accounts, chattel paper, investment property, deposit accounts, documents, goods, equipment, farm products, general intangibles, instruments, inventory, money, letter of credit rights, causes of action and other personal property (collectively, the "Collateral").

6. The security interest is perfected by the filing of a UCC-1 Financing Statement with the Florida Secured Transaction Registry on February 9, 2017 at document #201700252451.

7. As of the filing date, the Debtor is indebted to the Lender in the principal amount of $877,500.00 plus accrued and unpaid interest, costs and fees due pursuant to applicable law (the "Indebtedness").  The collateral that secures this loan is valued at approximately $69,884.00 and consists of cash, inventory, machinery and equipment.

8. The cash generated by the Debtor constitutes cash collateral within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral").  The Debtor requires the use of the Cash

Collateral for the continued operation of its business in the ordinary course, including payment of expenses attendant thereto; and, the Debtor is willing to provide the Lender with adequate protection of its secured interest in the Cash Collateral. Without the use of the Cash Collateral, the Debtor will be forced to discontinue its business operations. The loan documents are available from undersigned counsel upon request.

9. In order (i) to adequately protect the Lender in connection with the Debtor's use of the Cash Collateral, and (ii) to provide the Lender with additional adequate protection in respect to any decrease in the value of its interests in the Collateral resulting from the stay imposed under §362 of the Bankruptcy Code or the use of the Collateral by the Debtor, the Debtor would offer as adequate protection of the Lender's lien a replacement lien on all cash of the Debtor generated post-petition.

10. An immediate and critical need exists for the Debtor to be permitted to access the Cash Collateral to continue to operate. Therefore, the Debtor seeks a preliminary hearing in accordance with Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). At the preliminary hearing, the Debtor will seek entry of an interim order in order to preserve the value of its assets so as to avoid immediate and irreparable harm to the estate and to afford the Debtor the opportunity to obtain final approval for its use of Cash Collateral, subject to and within the limits imposed by the Budget attached hereto.

**WHEREFORE**, the Debtor respectfully requests an order authorizing the use of the Cash Collateral pursuant to the terms described herein, and granting such other relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished to all creditors and interested parties with the Notice of Hearing on this Motion.

- 4 -

        Respectfully submitted,

        Furr Cohen, P.A.
        *Attorneys for the Debtor*
        2255 Glades Road, Suite 301E
        Boca Raton, FL 33431
        (561) 395-0500/(561)338-7532-fax

        By: */s/Aaron A. Wernick*
          Aaron A. Wernick, Esq.
          Florida Bar No. 14059
          E-mail: awernick@furrcohen.com

EXHIBIT "A"

| Budget | #7346 Du-Rite Co. |
|---|---|
| Net Sales | |
| Cash | $145,000 |
| | |
| Denny's Royalties | $4,880 |
| Advertising | $4,880 |
| Labor & Taxes | $59,201 |
| Contract Labor | $1,272 |
| Rent | $17,927 |
| Loans | $2,145 |
| Beer & Liquor | $838 |
| Food & Paper | $24,480 |
| Produce | $2,350 |
| Dairy | $200 |
| Bread | $409 |
| Repairs | $925 |
| TV | $0 |
| Muzak | $0 |
| Accountant | $800 |
| Insurance | $0 |
| Property | $1,860 |
| Electric | $3,800 |
| Gas | $2,425 |
| C02 | $100 |
| Exterminator | $100 |
| Trash | $1,350 |
| Insurance | $600 |
| Misc. | $750 |
| | |
| TOTALS | $131,292 |
| | |
| Net income | $13,708 |

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                                      Case No. 18-17194-RAM
                                                            Chapter 11
DU-RITE COMPANY,

       Debtor.
_____/

**INTERIM ORDER GRANTING DEBTOR'S MOTION TO USE CASH
COLLATERAL OF LENDER SIMMONS BANK**

    **THIS MATTER** came before the Court on _____, 2018 at ____ a.m./p.m. in Miami, Florida upon the Debtor DU-RITE COMPANY, (the "Debtor") *Emergency Motion to Use Cash Collateral of Simmons Bank* [ECF __] (the "Motion"). Adequate notice of the hearing was given under the circumstances. The Court, having reviewed the record and having heard the proffers of counsel, and being otherwise fully advised in the premises, does hereby

    **ORDER and ADJUDGE** as follows:

    1.    The Motion is **GRANTED** to the extent set forth herein.

    2.    The Debtor is hereby authorized to use the Cash Collateral (as defined in the Motion) of Simmons Bank, (the "Lender") in the manner set forth in the Motion and provided in

- 5 -

this Order, on an interim basis until _____, 2018.

3. The Debtor is hereby permitted to use Cash Collateral, as defined in 11 U.S.C. § 363(a), including the cash or noncash proceeds of assets that were not Cash Collateral on the Petition Date ("Cash Collateral") up to the amounts shown in the Budget attached hereto.

4. As a condition of permitting the Debtor to use Cash Collateral as provided herein, the Debtor will operate strictly in accordance with the Budget and to spend Cash Collateral, not to exceed ten percent (10%) above the amount shown in the Budget.

5. As adequate protection for the use of Cash Collateral and for any diminution in value of the Lender's prepetition collateral as described in the loan documents between the Debtor and the Lender (the "Pre-petition Collateral") and post-petition interest, costs, and fees ("Post-petition Indebtedness"), and as security of the Post-petition Indebtedness, the Lender is hereby granted a valid, perfected lien upon, and security interest in, to the extent and in the order of priority of any valid lien pre-petition, all cash generated post-petition by the "Property" (as defined in the Motion).

6. Unless waived by the Lender in writing, the Debtor shall immediately cease using Cash Collateral upon the occurrence of one of the following events (an "Event of Default"):

   a. If a trustee is appointed in this Chapter 11 Case;
   b. If the Debtor breaches any term or condition of this Order or any of the Lender's loan documents, other than defaults existing as of the Petition Date;
   c. If the Case is converted to a case under Chapter 7 of the Bankruptcy Code;
   d. If the case is dismissed; or
   e. If any violation or breach of any provision of this Order occurs.

7. If an Event of Default occurs, the Lender shall immediately file with the Court a Notice of Default, at which time the Debtor shall immediately cease using any Cash Collateral. In

addition, upon the filing of an appropriate motion, the party that gave such notice shall be entitled to a hearing on not more than two business days' notice (subject to the Court's docket), which notice period commences the day on which actual service of a notice of an Event of Default is made by email, fax or by hand delivery on counsel for the Debtor, at which time the Lender may seek relief, including, without limitation, the following:

    a.    The lifting of the automatic stay under 11 U.S.C. §362 and permitting the Lender to take possession of all or a part of the Prepetition Collateral and Property;

    b.    The abandonment and immediate delivery to the Lender of all or any part of the Prepetition Collateral and Property, which the Lender shall be permitted to sell in accordance with applicable law, either piecemeal or as a going concern;

    c.    The entry of an order prohibiting or limiting the further use of Cash Collateral;

    d.    The appointment of a trustee in either chapter 11 proceeding or the entry of an order converting the case to chapter 7, if said request is filed with the Court on an expedited basis; and/or

    e.    Such further or other relief as provided in the Lender's loan documents, the Bankruptcy Code, or applicable non-bankruptcy law, including, without limitation, accelerating all indebtedness.

    8.    In addition to the Lender's right upon the occurrence of an Event of Default, the agreements by the Lender as set forth herein to allow the use of Cash Collateral may be terminated by the Lender prior to the occurrence of an Event of Default, without cause, at any time upon ten business days written notice to the Debtor (with copies to the Debtor's counsel, the U.S. Trustee, and the Court approved counsel for any official committees appointed in this case) and after filing such notice with the Court. Such notice shall be delivered by email, hand delivery, fax, or overnight mail. Upon termination, the Prepetition Indebtedness and Post-petition Indebtedness, including all accrued and accruing interest, costs, and expenses, including reasonable attorney's fees, shall then be immediately due and payable; provided however, that the obligations and rights of the Lender and the Debtor with respect to all transactions which have occurred prior to such termination,

including, without limitation, the Lender's security interests in and liens on the Prepetition Collateral and Post-petition Collateral shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination the Lender shall be deemed to have retained all its rights and remedies, including, without limitation, those provided pursuant to the Bankruptcy Code and applicable non-bankruptcy law, all of which rights are preserved for all purposes.

9. Upon receipt of a notice of an Event of Default or if the Lender exercises its rights under Paragraph 7, the Debtor shall be entitled to file an appropriate expedited motion for authority to use Cash Collateral (the "Cash Collateral Motion"), provided, however, that the Lender shall be given at least two business days written notice of any hearing (subject to the Court's docket), which notice period commences the day on which actual service is made by email, fax or by hand delivery on the respective Counsel for the Lender, of the Cash Collateral Motion, and the Lender shall be free to oppose the Cash Collateral Motion and assert any objections available to it under applicable law. The Debtor agrees that it shall not seek to grant a lien that is equal or senior to the Prepetition Collateral.

10. Payment by the Debtor of expenses other than those set forth in the submitted Budget attached hereto shall constitute cause to terminate the automatic stay in accordance with the provisions of this Order unless the Lender consents to those changes in writing. In consenting to a Budget item in the future or by taking any other actions pursuant to this Order, the Lender shall not have any liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" with respect to the operation or management of the Debtor.

11. This Order shall be binding on a subsequently appointed Chapter 11 or Chapter 7 Trustee in Bankruptcy.

12. The Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Prepetition Collateral, Post-petition Collateral, or otherwise.

13. The liens and security interest granted to the Lender shall be valid and perfected post-petition without the need for execution or filing of any further documents or instruments otherwise required to be filed or be executed or filed under non-bankruptcy law.

14. The Debtor shall forthwith serve a copy of this Order and the Motion on all parties and counsel entitled to notice pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

15. Nothing herein shall limit or prejudice the Lender from seeking such other or further relief or right available in law, under the Code or otherwise.

16. The Court shall conduct a final hearing on the use of cash collateral of the Lender on _____, 2018 at _____a.m./p.m. at C. Clyde Atkins United States Courthouse, 301 N. Miami Avenue, Courtroom 4, Miami, Florida, 33128.

###

Submitted by:
Aaron A. Wernick, Esq.
Furr Cohen, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
(561) 395-0500 - (561) 338-7532- fax
e-mail: awernick@furrcohen.com

*Aaron A. Wernick, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service.*